FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 19, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ESTELA G.,[1]

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

No. 1:26-cv-3036-EFS

**ORDER AFFIRMING THE ALJ'S DENIAL OF BENEFITS**

Plaintiff Estela G. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 and Title 16 benefits. Plaintiff claims she is unable to work due to back pain and panic attacks.

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

Although the record reflects that Plaintiff's impairments limit her physically and mentally, the ALJ's nondisability finding is adequately explained and supported by substantial evidence. The ALJ's decision is affirmed.

## I. Background

Plaintiff filed her Titles 2 and 16 applications for benefits on April 18, 2023, alleging disability beginning February 28, 2021.[2] She later amended the alleged onset date to January 30, 2024, to coincide with her turning 50 years old.[3] She alleged disability due to physical impairments in her back and several mental impairments.[4]

Plaintiff appeared for a hearing before ALJ David Johnson in March 2025, at which Plaintiff and a vocational expert testified.[5] As set

---

[2] Administrative Record (AR) 198, 208.

[3] AR 41. Turning 50 placed Plaintiff in the "individuals approaching advanced age" category for purposes of the Medical-Vocational Guidelines. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 200.01(g).

[4] AR 240.

[5] AR 36–64.

out in detail below, Plaintiff testified to completely disabling back pain and panic attacks.[6]

The ALJ issued a decision finding Plaintiff not disabled.[7] The ALJ found Plaintiff's alleged symptoms were "undermined for the reasons discussed throughout this decision. Inconsistencies undermine the weight that can be given to the claimant's symptom reports."[8] The ALJ found persuasive the prior administrative medical findings of all Disability Determination Services (DDS) medical consultants and found unpersuasive all other medical opinions.[9] As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through December 31, 2025.

---

[6] *See* AR 43–58.

[7] AR 14–30. Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[8] AR 23.

[9] AR 25–27.

- Step one: Plaintiff had not engaged in substantial gainful activity since February 28, 2021, the initial alleged onset date.
- Step two: Plaintiff had the medically determinable severe impairments of status post laminectomy and discectomy, stenosis, radiculopathy, generalized anxiety disorder, major depressive disorder, post-traumatic stress disorder, and psychotic disorder.
- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.
- RFC: Plaintiff had the RFC to:

  perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), that does not require more than frequent balancing, stooping, kneeling, crouching, crawling, or climbing; that does not require concentrated exposure to vibration or hazards; that consists of simple instructions; that does not require more than occasional, superficial interaction (such as "good morning" or "here is the item") with the general public; that does not require cooperative tasks; and that provides notice and instruction related to changes requiring adaptation.

- Step four: Plaintiff could not perform past relevant work.
- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant

numbers in the national economy, such as marker, routing clerk, and collator operator.[10]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council, which denied review.[11] Plaintiff now appeals to district court.[12]

## II. Standard of Review

When considering the ALJ's findings, the court is constrained to the reasons and supporting explanation offered by the ALJ.[13] Thus, the ALJ must articulate his findings and cite such supporting evidence to permit the court to meaningfully review the ALJ's findings.[14]

---

[10] AR 19–30.

[11] AR 1–3.

[12] ECF No. 1.

[13] *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

[14] *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the court to meaningfully review the ALJ's finding); *Blakes v. Barnhart*, 331 F.3d

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[15] and such error impacted the nondisability determination.[16] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[17]

---

565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

[15] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[16] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[17] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028,

## III. Analysis

Plaintiff argues the ALJ erred by failing to provide specific, clear, and convincing reasons to reject her symptom testimony, which caused the ALJ to wrongfully determine she could perform a reduced range of light work.[18] In response, the Commissioner argues no error occurred and that the ALJ's decision is supported by substantial evidence. As is explained below, Plaintiff fails to establish consequential error.

---

1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[18] Plaintiff contends the medical opinions do not support the ALJ's rejection of her testimony but does not challenge the ALJ's compliance with 20 C.F.R. §§ 404.1520c, 416.920c.

1. Standard

If an ALJ assesses severe impairments and does not find any evidence of malingering, the ALJ can discount the claimant's testimony about the severity of her impairments only "based on clear and convincing reasons."[19] The "clear and convincing" standard is "the most demanding standard under [Ninth Circuit] precedent. It requires that the ALJ provide more than general findings, identify what testimony is not credible, and identify what evidence undermines that testimony. The ALJ must also state a rationale clear enough that it has the power to convince."[20]

2. Plaintiff's testimony

Plaintiff testified at the ALJ hearing in March 2025 that she last worked as a cook and cashier at a gas station in 2020, where she

---

[19] *Smartt v. Kijakazi*, 53 F.4th 489, 497 (9th Cir. 2022) (citation modified).

[20] *Collard v. Bisignano*, No. 25-6334, --- F.4th ----, 2026 WL 2856741, at *2 (9th Cir. Sept. 23, 2026) (citation modified).

experienced back pain and panic attacks.[21] She then worked as a caregiver until 2021, which she said she could no longer do because of her back injury.[22] She said she experienced significant pain when lifting items, eventually requiring back surgery in November 2023.[23] She testified she still experiences significant back pain, which prevents her from lifting anything weighing ten pounds or heavier.[24] She said her back requires her to sleep on her left side, causes her left leg to go numb, sends sharp pains down her back and leg throughout the day, prevents her from bending down, and "hurts all the time."[25]

As to her mental health, Plaintiff testified she has therapy every two to three weeks to treat her anxiety and panic attacks.[26] She testified to having panic attacks at least twice a week that make her

---

[21] AR 45, 54–56.

[22] AR 53–54.

[23] AR 51.

[24] AR 52.

[25] AR 54.

[26] AR 50.

anxious, sweaty, and unable to "function right."[27] She said the panic attacks happen when people are around and not around.[28] She said she takes medication, Clonidine, when she has a panic attack, which helps.[29]

As to her daily activities, Plaintiff testified she could drive, read books, watch television, and play mobile video games.[30] She said she could do laundry and some yardwork but needed to take breaks.[31] She said she could cook and clean with the help of her two teenage sons.[32] She testified that her sister who lived 15 minutes away helped her with household chores, cooking, yardwork, and taking care of and driving the children.[33] Plaintiff said she calls her sister when she has a panic

---

[27] AR 56–58.

[28] AR 57.

[29] AR 57.

[30] AR 44, 47–48.

[31] AR 48.

[32] AR 44, 48, 56.

[33] AR 49–50, 55.

attack and then her sister comes over.[34] Plaintiff testified her sister comes over "[p]retty much every day . . . after work to make sure [Plaintiff is] okay."[35]

In a function report from August 2023, Plaintiff reported severe physical and mental symptoms consistent with her hearing testimony.[36] She added that she cannot stand for more than five minutes and cries all day because of her back pain and mental health.[37]

3. ALJ's reasons, and analysis thereof

The ALJ found "the weight that can be given to the claimant's symptom reports is undermined for the reasons discussed throughout this decision. Inconsistencies undermine the weight that can be given to the claimant's symptom reports."[38] As a result, the ALJ determined that Plaintiff could adjust to work consistent with her RFC.

---

[34] AR 50.

[35] AR 55.

[36] AR 266–73.

[37] *E.g.*, AR 266, 273.

[38] AR 23.

*a.* *Physical impairments*

First, the ALJ summarized the following medical records of Plaintiff's back pain.[39] She underwent L4/5 laminotomy and microdiscectomy in November 2023 to treat lumbar spondylolysis and radiculopathy.[40] On follow-up in February 2024, she reported 5/10 constant pain with low back soreness and numbness and pain in her left thigh.[41] She reported recently lifting boxes weighing approximately 25 pounds.[42] She had a normal physical exam except for a positive left straight leg test.[43]

On follow-up in April 2024, Plaintiff reported occasional 6/10 pain radiating to her left leg that had markedly improved.[44] She was then

---

[39] AR 23–24.

[40] AR 950.

[41] AR 933.

[42] AR 933.

[43] AR 934.

[44] AR 1002.

only taking over-the-counter medicine for pain management.[45] Because an updated MRI showed residual stenosis and epidural fibrosis, her orthopedist prescribed her gabapentin for back pain.[46] Physical therapy was recommended, but Plaintiff declined because she did not have a car.[47] Her primary care provider recommended contacting her office to arrange transportation services,[48] but the record does not contain evidence of Plaintiff participating in physical therapy.

In June 2024, Plaintiff visited her primary care provider to request paperwork for her disability claim.[49] She rated her pain then 6/10 with occasional shooting pains down both legs.[50] Her provider advised her to return in September 2024 if her symptoms worsened or

---

[45] AR 1002.

[46] AR 1003.

[47] AR 1003.

[48] AR 991.

[49] AR 990.

[50] AR 990.

failed to improve.[51] Plaintiff did return in September 2024, but her only physical-health complaint was right shoulder pain with onset three weeks prior.[52]

On surgery follow-up in July 2024, she reported "doing better," having aches in her low back and numbness in her left thigh, and feeling "80% better" than before surgery.[53] She said she did not like gabapentin so she stopped taking it, and was instead taking only over-the-counter medicine for pain.[54] She was ambulatory and in no acute distress on exam.[55] An MRI showed no significant stenosis.[56] The orthopedist advised Plaintiff to follow up with him as needed.[57]

---

[51] AR 991.

[52] AR 992–93.

[53] AR 1009.

[54] AR 1009.

[55] AR 1009.

[56] AR 1010.

[57] AR 1010.

The ALJ also considered and found persuasive the prior administrative medical findings of DDS medical consultants Ian C., MD, and Stanley S., MD.[58] At the initial and reconsideration stages of Plaintiff's disability claims, Drs. C. and S. reviewed the medical records available as of April 2024 at the latest, and both opined that Plaintiff retained the ability to perform a reduced range of light work.[59]

The ALJ also considered, but found unpersuasive, the treating medical opinion of primary care provider Sarah Garrison, ARNP.[60] NP Garrison opined in June 2024 that for the following six months Plaintiff either could not lift more than two pounds or would be unable to stand or walk.[61]

The ALJ explained that the foregoing evidence undermined Plaintiff's physical symptom testimony because (1) the degree of limitation from the pain to which she testified was inconsistent with

---

[58] AR 25.

[59] *See* AR 68–69, 72–73, 78–79, 82–83, 90–92, 95–96, 101–03, 106–07.

[60] AR 26.

[61] AR 1133.

the pain she reported to her orthopedist, the normal physical exam findings, the follow-up MRIs, and managing her pain with over-the-counter medicine; (2) Plaintiff did not go to physical therapy as recommended despite being offered transportation, suggesting her pain was not as limiting as alleged; (3) Plaintiff did not return to her orthopedist after July 2024 as advised if needed, and when she returned to her primary care provider in September 2024 she complained only of acute and recent shoulder pain; (4) Plaintiff's complaints to her primary care provider when she requested disability paperwork were worse than her complaints a month later to her orthopedist; (5) Plaintiff's alleged limitations are inconsistent with the light-work opinions of the DDS medical consultants, who did not even have access to the records of improvement after April 2024; and (6) NP Garrison's medical opinion supporting Plaintiff's testimony was temporally limited, heavily reliant on Plaintiff's self-reports, and inconsistent with NP Garrison's own treatment notes as well as the overall medical records.[62]

---

[62] AR 23–27.

Here, on this record, the ALJ's reasons are clear, convincing, and supported by substantial evidence. The ALJ highlighted several medical records showing that Plaintiff's pain progressively improved after back surgery and did not show any underlying physical condition to support claims of completely disabling pain.[63] The ALJ further noted that except for directly after surgery and a later brief stint on gabapentin, Plaintiff managed her pain only with over-the-counter medicine.[64] The ALJ reasonably questioned the alleged severity of

---

[63] While an ALJ may not "reject a claimant's subjective complaints based *solely* on lack of medical evidence to *fully corroborate* the alleged severity of pain," the ALJ may discount subjective complaints that are *inconsistent* with the objective medical evidence, so long as the ALJ explains why the objective medical findings are inconsistent with the claimant's complaints. *Smartt*, 53 F.4th at 498 (quoting *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (emphasis added in *Smartt*)).

[64] *See Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) ("The ALJ also noted that Parra's physical ailments were treated with an over-

Plaintiff's pain because, despite physician recommendation and an offer for transportation, Plaintiff did not pursue physical therapy and lacked a compelling reason not to do so.[65] Nor did she return to providers with complaints of worsening back pain. In addition, the ALJ reasonably weighed the relevant medical opinions,[66] correctly noting that the DDS medical consultants did not have more recent evidence of improvement but still opined based on the record that Plaintiff could perform light work, and that NP Garrison's treatment notes contained

---

the-counter pain medication. We have previously indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.").

[65] *Cf. Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014) (finding the ALJ erred by discounting Plaintiff's testimony based on her failure to follow prescribed treatment when her mental illnesses justified such failure).

[66] *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196–97 (9th Cir. 2004) (relying on medical opinions to discount subjective testimony).

no findings that could support a two-pound lifting restriction or total stand/walk limitation.

The Court acknowledges Plaintiff's argument that the ALJ did not discuss an orthopedist's note from February 2024 that a positive straight leg test "does raise the concern for recurrent disc herniation in the postoperative setting of a laminotomy microdiscectomy."[67] This note does not defeat the ALJ's clear and convincing reasons supported by substantial evidence discussed above. Moreover, no such recurrent disc herniation ever occurred; follow-up MRIs in April and July 2024 showed no new or worsening injuries. Plaintiff also argues that the Administration requires a positive straight leg test for a claimant to prove a listed disorder based on compromise of a nerve root of the lumbar spine,[68] which merely highlights the efficacy of such testing generally and is irrelevant to Plaintiff's claimed disabilities.

---

[67] AR 934.

[68] *See* 20 C.F.R. Pt. 404, Subpt. P., App'x 1, § 1.00(F)(2)(c).

Finally, Plaintiff contends the Ninth Circuit's recent decisions in *Collard v. Bisignano*[69] and *Fain v. Bisignano*[70] support her arguments. The Court disagrees. In both cases, the Ninth Circuit held that the ALJ erred by rejecting the claimant's testimony about pain caused by fibromyalgia based on, among other reasons, the claimant's normal presentations at doctor's appointments and in objective testing.[71] The Ninth Circuit explained that fibromyalgia symptoms wax and wane and may be debilitating despite normal physical-exam findings.[72] But there is no fibromyalgia evidence in the instant case and objective testing and imaging could reliably test limitations caused by Plaintiff's back injury and status post back surgery.

*b.* *Mental impairments*

Next, the ALJ summarized the following medical records of Plaintiff's mental health. As treatment for depression, anxiety, and

---

[69] No. 25-6334, --- F.4th ----, 2026 WL 2856741 (9th Cir. Sept. 23, 2026).

[70] No. 25-3219, --- F.4th ----, 2026 WL 2795427 (9th Cir. Sept. 18, 2026).

[71] *Collard*, 2026 WL 2856741, at *4; *Fain*, 2026 WL 2795427, at *3–4.

[72] *Collard*, 2026 WL 2856741, at *4; *Fain*, 2026 WL 2795427, at *3–4.

PTSD, Plaintiff has been in regular therapy and taken various medications since at least 2021.[73] She reported to her providers throughout 2023 that she had panic attacks at least once a week.[74] Her panic attacks increased in November 2023, so she started taking Clonidine as needed when she had a panic attack.[75] She was still having panic attacks with Clonidine in March 2024.[76] But in April 2024, and at every mental health appointment thereafter, Plaintiff denied having panic attacks, or did not report panic attacks, while taking Clonidine.[77]

Plaintiff also complained to providers of having worsening ability to concentrate.[78] In December 2023 and March 2024, when Plaintiff reported increased anxiety because of her back pain after surgery, her

---

[73] *See, e.g.*, AR 496, 505–06.

[74] *See, e.g.*, AR 878, 896.

[75] AR 896, 911.

[76] AR 1049.

[77] AR 1061, 1072, 1075, 1089, 1100, 1102, 1105, 1116, 1126, 1129.

[78] AR 878, 896, 1116.

providers assessed her with impaired concentration.[79] At several later visits, starting in April 2024, providers routinely assessed Plaintiff with no concentration deficits.[80]

Plaintiff presented to mental health appointments with varying mental statuses throughout 2024: she was assessed with a sad and/or anxious mood; congruent with mood, tired, and/or intermittingly tearful affect; racing thought process; and thought content of hopelessness and/or helplessness.[81] But all these mental status exams also assessed normal grooming, speech, language, cognition, associations, perception, orientation, knowledge, insight, judgment, and memory.[82] She had overall normal mental status exams except for a sad and/or tired mood at visits when she rated her depression 9/10 and her anxiety 7/10.[83]

---

[79] AR 910, 914, 1049, 1053.

[80] AR 1065, 1079, 1093, 1109, 1120.

[81] AR 1053, 1065, 1079, 1093, 1109.

[82] AR 1053, 1065, 1079, 1093, 1109.

[83] AR 1075, 1078–80, 1116, 1119–21.

The ALJ also considered and found persuasive the prior administrative medical findings of DDS psychological consultants Renee E., PhD, and Rita F., PhD.[84] At the initial and reconsideration stages of Plaintiff's disability claims, Drs. E. and F. reviewed the medical records available as of April 2024 at the latest, and both opined that Plaintiff retained a mental RFC consistent with the ALJ's crafted RFC, except the ALJ additionally determined Plaintiff's testimony showed she could not perform cooperative tasks.[85]

The ALJ also considered, but found unpersuasive, the opinion of consultative psychological examiner Leslie Smith, ARNP.[86] NP Smith examined Plaintiff in September 2023 and opined that Plaintiff could not carry out complex instructions, sustain regular pace and attendance, or interact with anyone at work.[87]

---

[84] AR 26.

[85] AR 68, 73–75, 78, 83–85, 90, 96–98, 101, 107–09; *see* AR 26.

[86] AR 27.

[87] AR 829–34.

The ALJ explained that the foregoing evidence undermined Plaintiff's mental symptom testimony because (1) the medical records showed therapy and medication successfully managed Plaintiff's symptoms; (2) the normal concentration assessments and Plaintiff's ability to drive, read books, and play games contradicted her alleged difficulties concentrating; (3) Clonidine treated her panic attacks and she did not report panic attacks to mental health providers after March 2024, contradicting her testimony of having panic attacks twice a week; (4) grossly normal mental status exams showed she sometimes overstated her symptoms to providers and do not support her testimony; (5) the DDS psychological consultants' opinions undermined Plaintiff's testimony and were supported by their review of the record and consistent with the mental-health treatment records; and (6) NP Smith's examining opinion, which supported Plaintiff's testimony, was not supported by NP Smith's own exam findings and not consistent with the mental-health treatment records.

Here, on this record, the ALJ's reasons are overall clear, convincing, and supported by substantial evidence. The ALJ's most convincing reason is that after March 2024, when Plaintiff was taking

Clonidine for panic attacks, Plaintiff had several mental health therapy and medication-management appointments at which she denied having any panic attacks or did not report having panic attacks twice a week as she testified to at the ALJ hearing. Further, the longitudinal treatment records support the ALJ's finding that ongoing therapy and medication successfully managed Plaintiff's symptoms.

The ALJ's evaluation of the medical opinions also provides clear and convincing reasons. The ALJ reasonably credited the DDS consultants' reviewing opinions because they reviewed all medical records through April 2024 and did not even have access to Plaintiff's later reports to providers of improvement on Clonidine. Substantial evidence supports discounting NP Smith's examining opinion because she examined Plaintiff only once in September 2023, before the alleged onset date and Plaintiff's improvement in 2024, and based her opinions largely on Plaintiff's self-reports.[88] NP Smith's exam findings did not

---

[88] *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based 'to a large

support her opined work-precluding mental impairments, as Plaintiff gave correct responses on memory, knowledge, and concentration testing, and exhibited overall normal mental status.[89] Plaintiff reported to NP Smith experiencing hallucinations starting four years prior and as recent as the week before,[90] but Plaintiff denied present hallucinations throughout her mental health treatment and there is no evidence of psychosis symptoms during the relevant period. Further, as the ALJ found, NP Smith's opinion was not consistent with any other opinion or with any mental-health treatment records.[91]

---

extent' on a claimant's self-reports that have been properly discounted as incredible.").

[89] AR 831–33. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported).

[90] AR 830, 832–33.

[91] *See Ghanim v. Colvin*, 763 F.3d 1154,1164 (9th Cir. 2014) (recognizing that an ALJ may discount a medical opinion that is

The Court does, however, take issue with the ALJ discounting Plaintiff's testimony based on her activities of daily living. By itself, Plaintiff's ability to drive, read books, and play mobile video games would not be a convincing reason supported by substantial evidence. Plaintiff testified she requires breaks during her activities and sometimes must rely on her sister to drive.[92] The ALJ did not convincingly explain how basic activities like driving, reading, or playing games translate to the sustained concentration required for full-time work.[93]

---

inconsistent with treatment records if the ALJ properly considered the overall diagnostic record).

[92] *See Garrison*, 759 F.3d at 1016 (holding the ALJ erred in discrediting the claimant's testimony based on her daily activities when the claimant testified her mother assisted her and that she required frequent breaks).

[93] *See Collard*, 2026 WL 2856741, at *3 (To discredit testimony based on the claimant's activities of daily living, the ALJ has to "connect [the claimant's] activities to the conclusion that she could spend a

Nevertheless, this one inadequate part of the ALJ's analysis does not change the outcome. The ALJ's overall explanation would be convincing and supported by substantial evidence even if the ALJ did not address Plaintiff's reported activities or did not hold them against her claim of disability.

Finally, Plaintiff's reliance on *Collard* and *Fain* is also misplaced with respect to mental impairments. There were no mental impairments involved in *Collard*, and, except for the daily activities evidence, *Collard*'s subjective-testimony analysis is inapposite to Plaintiff's mental-impairment testimony.[94] And *Fain* supports affirming the ALJ here as to mental impairments. In *Fain*, the Ninth Circuit held:

> The ALJ provided [specific, clear, and convincing] reasons when rejecting Claimant's testimony concerning her mental impairments and the symptoms that she experiences due to anxiety, ADHD, PTSD, insomnia, and major depressive disorder. The ALJ explained why the alleged severity of those symptoms is inconsistent with the medical evidence,

---

substantial part of her day engaged in pursuits transferable to a work setting.") (citation modified).

[94] *See Collard*, 2026 WL 2856741, at *2–4.

> Claimant's activities, and her treatment. For example, providers generally noted that Claimant's cognition was intact; Claimant was cooperative, alert, and oriented during medical appointments; and she never required psychiatric hospitalization. Moreover, Claimant admitted to shopping by herself "maybe twice a month" and having gone on camping trips and to a comedy club with friends.[95]

As explained, the ALJ here provided similar—and more—reasons to discount Plaintiff's mental-impairment testimony.

## IV. Conclusion

Plaintiff fails to establish that the ALJ consequentially erred. The ALJ's nondisability findings are supported by explanation and substantial evidence.

Accordingly, **IT IS HEREBY ORDERED**:

1. The ALJ's nondisability decision is **AFFIRMED**.
2. The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 13 and 16**, enter **JUDGMENT** in favor of the **Commissioner**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

---

[95] *Fain*, 2026 WL 2795427, at *4.

DATED this 19th day of October 2026.

EDWARD F. SHEA
Senior United States District Judge